******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROGERS, C. J., concurring. I agree with and join in the conclusion reached by the majority that the judgment of the Appellate Court ordering that the petitioner, Richard Lapointe, receive a new criminal trial must be affirmed, because the petitioner proved that he was prejudiced by his first habeas counsel's deficient failure to pursue a *Brady*[1] claim predicated on the state's suppression of a note written by Detective Michael Ludlow of the Manchester Police Department, who was the initial lead investigator in the crimes underlying the petitioner's conviction (Ludlow note). See *State* v. *Lapointe*, 138 Conn. App. 454, 53 A.3d 257 (2012). More specifically, the petitioner has shown that, had the Ludlow note been disclosed prior to his criminal trial, the probability of a different outcome is sufficient to undermine confidence in the result of that trial.

Although I embrace, for the most part, the thorough and persuasive analysis employed by the majority to reach this conclusion, I write separately to disavow the majority's repeated reliance on law review and social science articles postdating the petitioner's criminal trial by many years as part of its assessment of the strength of the evidence supporting the petitioner's conviction and, by extension, the likelihood that the addition of the burn time evidence would have altered the outcome.[2] Instead, I conclude that the record of the petitioner's criminal trial standing alone, without the embellishment of subsequently produced research and literature that was not in existence and, therefore, could not have been considered by the jury at that trial, adequately demonstrates that the case against the petitioner was not a particularly compelling one.

Because the majority opinion outlines the trial evidence and its weaknesses in detail, a brief summary here will suffice. The physical evidence against the petitioner was practically nonexistent, such that the case rested almost entirely upon his own incriminating statements. Those statements were characterized by vacillation and equivocation, were expressed in an odd, confirming fashion accompanied by repeated denials of recollection and, on multiple points, were inconsistent with the physical evidence. Significantly, the petitioner inaccurately described the victim's clothing, the number of stab wounds and the location in her apartment at which they were inflicted, and the method of her strangulation. It further was undisputed that the petitioner suffered from a congenital malformation of the skull that left him with cognitive, physical and sensory deficits. Numerous acquaintances and relatives testified as to his simplemindedness and gullibility. Several psychiatrists and psychologists examined the petitioner and also testified about his deficits, describing him simi-

larly as did the acquaintances and agreeing that he was capable of confessing falsely to murder. Finally, various witnesses' testimony demonstrated that the knowledge that the victim had been sexually assaulted was not, as the state had asserted, uniquely in the possession of the petitioner, but rather, was widespread.

Instead of relying solely on the foregoing weaknesses in the petitioner's 1992 criminal trial to conclude that confidence in the reliability of his conviction has been undermined, the majority supplements the trial record with secondary materials produced only recently, within the last five or six years. My objection to the use of these materials is twofold. First, as a temporal matter, they were not in existence at the time of the petitioner's criminal trial and, therefore, could not have been presented to, or considered by, the jury that convicted him. Accordingly, they should not be relied upon by this court to evaluate the likelihood of a different result had the Ludlow note been timely disclosed. Second, as a jurisprudential matter, the majority, in discussing the content of extra-record materials in relation to the specifics of this case, treads dangerously close to employing those materials to make findings on appeal in regard to the reliability of the petitioner's confession. This court repeatedly has drawn the distinction between the proper use of extra-record materials such as social science texts or journal articles as "legislative facts . . . which help determine the content of law and policy, and adjudicative facts . . . concerning the parties and events of a particular case. . . . Legislative facts may be judicially noticed [on appeal] without affording the parties an opportunity to be heard, but adjudicative facts, at least if central to the case, may not." (Citation omitted; internal quotation marks omitted.) *State* v. *Edwards*, 314 Conn. 465, 478–79, 102 A.3d 52 (2014); see also *State* v. *Rizzo*, 303 Conn. 71, 97–98 n.16, 31 A.3d 1094 (2011); see also *State* v. *Rizzo*, supra, 184 n.81.

I also want to emphasize certain points with respect to the majority's conclusion in part II B of its opinion that it need not defer to the habeas court's determination regarding the credibility of the petitioner's expert witnesses. Specifically, I would emphasize that this court is concluding that it need not defer to the habeas court's credibility determination *only* because: (1) the habeas court is not making an ultimate finding as to the credibility of the expert witnesses, but is determining only whether there is a reasonable probability that the *jury* could credit their testimony, pursuant to the materiality standard of *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963);[3] and (2) the habeas court did not base its credibility determination on the expert witness' personal demeanor, but on a factor that this court is in as good a position to assess, namely, the substance

of the testimony. The majority is *not* holding, and I would strongly reject any suggestion, that this court may ever second-guess the factual findings of the ultimate finder of fact, even when those findings were based on the cold record. The majority also is not holding that the habeas court need not be provided with an opportunity to assess a witness' credibility on the stand, even when it is addressing a claim pursuant to *Strickland* or *Brady*. Rather, it is concluding that, when the habeas court has had that opportunity, and has concluded only that the *substance* of the testimony undermines its credibility, this court is in as good a position as the habeas court to make that assessment.

Accordingly, I do not share Justice Zarella's fear, expressed in his dissenting opinion, that, as the result of the majority opinion, the habeas court will no longer have any important role to play when addressing *Strickland* and *Brady* claims. The habeas court still must be afforded an opportunity to assess credibility based on the personal demeanor of witnesses and this court will continue to defer to such assessments. The majority concludes only that, when a credibility assessment is *not* based on the witness' demeanor or on other factors that this court is not in a position to evaluate, but is based solely on the substance of the evidence, this court is not required to defer to the assessment. In addition, I believe that the rule that the majority adopts today should apply primarily to the testimony of expert witnesses, for whom demeanor generally is much less important than the witness' qualifications and the soundness of his opinion when a finder of fact is assessing his or her credibility, and should rarely if ever apply to factual testimony. See *State Board of Physicians* v. *Bernstein*, 167 Md. App. 714, 760, 894 A.2d 621 (2006) ("[d]emeanor most often is a factor in deciding the credibility of a fact witness who is testifying about a fact that may be true or false, not of an expert who is offering his opinion based on assumed facts");[4] id., 760–61 (Maryland Board of Physicians was not required to defer to administrative law judge's assessments of credibility of expert witnesses when assessments were not based on demeanor). Accordingly, I have no reason to believe that the rule will be invoked with a high degree of frequency.

In all other respects, I agree with the majority opinion and its ultimate holding that the judgment of the Appellate Court should be affirmed.

[1] *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

[2] The petitioner was convicted, after a jury trial, in 1992. The articles relied upon by the majority were written between 2009 and 2013. See, e.g., part III C of the majority opinion (citing 2011 publication by B. Garrett); footnote 74 of the majority opinion (citing 2013 article by D. Harkins and 2010 article by B. Garrett); footnote 83 of the majority opinion (citing 2012 article by G. Gudjonsson, 2009 article by R. Leo, and 2011 article by J. Masip).

[3] Obviously, there are situations in which the habeas court does act as the ultimate finder of fact. For example, if a petitioner raised an ineffective assistance of counsel claim on the ground that his trial attorney was either drunk or asleep during most of the criminal trial, the habeas court's factual

findings on that issue would be final and binding on the reviewing court.

[4] I recognize that, as Justice Zarella has pointed out in his dissenting opinion, this court has held that the ultimate fact finder should consider the demeanor of an expert witness when determining his or her credibility and that this court must defer to that determination. I again emphasize that nothing in this opinion or in the majority opinion is to the contrary. Rather, the majority holds only that, when a habeas court is addressing a *Brady* claim, has had the opportunity to consider the demeanor of an expert witness and has found the witness' testimony to lack credibility on the basis of its *substance*, this court need not defer to that assessment.